**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| VINCENT LUPPINO, CLIFF STERN, JOHN CASIERO, and NOEL J. SPIEGEL, individually and on behalf of all others similarly situated,<br><br>              Petitioners,<br><br>v.<br><br>MERCEDES-BENZ FINANCIAL SERVICES USA LLC,<br><br>              Respondent. | Civ. No. 13-MC-50212-DML-LJM<br><br>**MERCEDES-BENZ FINANCIAL SERVICES USA LLC'S OPPOSITION TO PETITION TO ENFORCE SUBPOENA**<br><br>Judge David M. Lawson<br><br>Magistrate Judge Laurie Michelson |

## ISSUES PRESENTED

1. Document requests 1, 3-6, and 10-12 and deposition topics 1-3 of the January 4, 2013 subpoena (the "2013 Subpoena") served by Petitioners on Mercedes-Benz Financial Services USA LLC ("MBFS") are duplicative of requests in another subpoena served on MBFS by Petitioners on November 2, **2011** (the "2011 Subpoena"). MBFS responded to the 2011 Subpoena on November 15, 2011, agreeing to produce documents relating to Petitioners, but otherwise objecting to the requests or stating that it did not have responsive documents. Should the Court deny the Petition to enforce the above requests on the grounds that it is untimely?

2. Petitioners claim that the information sought in the 2013 Subpoena is "unquestionably relevant" to the underlying litigation. Dkt. 2 at 11. Yet, they waited until the fourth year of litigation to propound the 2013 Subpoena, only ten days before the then-operative January 14, 2013 discovery deadline. MBFS objected to the 2013 Subpoena on January 4, 2013 and the discovery deadline was subsequently extended until February 19, 2013. Petitioners did not file the Petition until February 7, 2013 and the discovery deadline has now passed. Should the Court deny the Petition on the grounds that it is untimely?

3. Petitioners seek documents and information concerning wheel and tire hazard insurance offered by MBFS. Such insurance covers damage to wheels and tires caused by road hazards **not normally** found in the roadway. It does not cover damage caused by defects. The underlying litigation concerns an alleged defect that purportedly causes certain wheels to fail under **normal** road conditions. Should the Court deny the Petition to compel production of information concerning wheel and tire hazard insurance on the grounds that it is not relevant?

4. Petitioners seek documents and information concerning vehicles that (i) customers sought to return or stop paying for, or (ii) that customers or dealerships complained were unfit for Certified Pre-Owned status, on account of any type of wheel damage.  Such requests are overbroad because they seek information concerning wheels damaged by any cause, including causes unrelated to the alleged defect.  But even if the requests were limited to wheels damaged by the alleged defect, compliance would be burdensome and require individualized review of customer accounts to determine whether a complaint related to the alleged defect rather than wheel damage from an unrelated cause.  Should the Court deny the Petition to enforce such requests on the grounds that they are overbroad and unduly burdensome?

5. Petitioners seek to transfer the Petition to the District of New Jersey, where the underlying litigation is pending.  MBFS is not a party to that litigation and objects to having to travel to New Jersey at Petitioners' insistence, when the subpoena was served in the Eastern District of Michigan.  In addition, Federal Rule of Civil Procedure 45 does not authorize transfer of a motion to compel compliance with a Subpoena.  Should the Court deny Petitioners request to transfer their Petition to the District of New Jersey?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Rules:**

Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 45

**Case Law:**

*Anco Eng'g. Co. v. Bud Radio, Inc.*, 1963 U.S. Dist. LEXIS 10461 (D. Ohio Dec. 17, 1963).......7

*Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006)........................................................................8

*Dow Chem. Can., Inc. v. HRD Corp*., 2010 U.S. Dist. LEXIS 66374 (S.D. Tex. July 2, 2010)...17

*Everett v. Aldi, Inc*., 2009 U.S. Dist. LEXIS 28877 (N.D. Ind. Apr. 6, 2009).............................11

*Ginett v. Federal Express Corp.*, 1998 U.S. App. LEXIS 27659 (6th Cir. Oct. 21, 1998).............9

*Hyland v. Homeservices of Am., Inc.*, 2012 U.S. Dist. LEXIS 67028 (W.D. Ky. May 14, 2012)..................................................................................................................................7, 9, 10

*In re Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46 (7th Cir.1996)................................16

*In re Sealed Case*, 141 F.3d 337 (D.C. Cir. 1998)..................................................................16, 17

*In re Sulfuric Acid Antitrust Litig*., 230 F.R.D. 527 (N.D. Ill. 2005)....................................7, 9, 11

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3rd Cir. 2012)....................................................13

*Prosonic Corp. v. Baker*, 2008 U.S. Dist. LEXIS 36035 (S.D. Ohio Apr. 7, 2008)....................16

*Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, 2004 U.S. Dist. LEXIS 26861 (N.D. Ill. Dec. 29, 2004).........................................................................................7, 9, 10

*West v. Miller*, 2006 U.S. Dist. LEXIS 56243 (N.D. Ill. Aug. 11, 2006)...............................7, 8, 9

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

I.     RELEVANT BACKGROUND ....................................................................................... 3

II.    ARGUMENT ............................................................................................................ 6

     A.  The Petition Is Untimely Because the Requests Are Duplicative Of Previously Served Discovery and/or Were Served at the Tail-end of Discovery......................... 6

          1.  Petitioners Have Delayed More than a Year in Seeking to Enforce Many Requests ........................................................................................ 6

          2.  Petitioners Unduly Delayed By Filing the Petition at the Tail-end of Discovery ..................................................................................... 9

     B.  The Information Sought in the 2013 Subpoena is Irrelevant to the Underlying Litigation and/or Not in MBFS's Possession, Custody, or Control ......................... 11

          1.  Documents and Information Concerning MBFS's Wheel and Tire Hazard Plans are Irrelevant Because Such Plans Do Not Cover Defects ....... 11

          2.  Requests Concerning Vehicles that Customers Sought to Return or Stop Paying for on Account of Wheel Damage are Overbroad and Unduly Burdensome .................................................................................. 13

          3.  Requests for Information Concerning Vehicles Alleged to be Unfit For the Certified Pre-Owned Program Are Overbroad and Unduly Burdensome .................................................................................. 15

     C.  Rule 45 Does Not Permit Transfer of the Petition to the District of New Jersey..... 16

CONCLUSION................................................................................................................ 17

## INTRODUCTION

The Petition to enforce the January 4, 2013 third-party subpoena served on Mercedes-Benz Financial Services USA LLC ("MBFS") is fatally flawed and should be denied for at least three reasons: (1) the Petition is untimely because, among other reasons, it concerns a subpoena that was served on the eve of the discovery cut-off in the underlying action, and many of the requests are duplicative of those from a prior subpoena served on MBFS by the same plaintiffs here *more than a year ago*, in November *2011*; (2) the Petition seeks the production of wholly irrelevant documents and testimony, such as wheel and tire insurance claims data and coverage information that does not relate to defects, much less the alleged defects at issue in the underlying litigation; and (3) the Petition is overly broad and unduly burdensome and, even if narrowed, would require MBFS, which is not a party to the underlying litigation, to manually search and review untold numbers of customer accounts.

Petitioners purport to seek enforcement of a subpoena served on MBFS on January 4, 2013 (the "2013 Subpoena").  But the truth is that many of the requests therein seek information originally requested in a separate subpoena served on MBFS more than a year ago, on November 2, 2011 (the "2011 Subpoena").  In its November 15, 2011 responses to that subpoena, MBFS agreed to produce some documents relating to Petitioners, but otherwise objected to the requests on numerous grounds, including relevance and over breadth, or otherwise responded that it had no responsive documents.  MBFS completed its production of documents on *May 30, 2012* and reiterated that it would stand on its previously asserted objections.

Despite knowing with certainty in May 2012 that MBFS would not agree to produce additional documents, Petitioners delayed an additional eight months in seeking to enforce the subpoena; and, indeed, never sought to enforce that subpoena or seek additional documents

once MBFS advised its production was complete.  Instead, Petitioners have attempted to obscure their dilatory conduct by simply repropounding the disputed requests in the guise of the instant 2013 Subpoena, but the record speaks for itself.  Petitioners also misleadingly suggest that their protracted delay is excused because they took Rule 30(b)(6) depositions of Mercedes-Benz USA, LLC ("MBUSA") concerning its internal operations during the interim period.  (Dkt. 2 at 4.)  In fact, the discovery Petitioners sought during this period had nothing to do with MBFS.  Petitioners' delay is due to their own lack of diligence and nothing else.

The Petition is also untimely as to the requests made for the first time in the 2013 Subpoena.  Petitioners assert that the information they seek is "unquestionably relevant." (Dkt. 2 at 11.)  But if that were true (it is not), their decision to serve the operative subpoena on the eve of the then-current discovery cut-off—during the fourth year of litigation—is inexcusable.  The same is also true for their decision to delay a further month in bringing this motion after receiving MBFS's objections, ensuring that it could not be decided before the then-operative February 19, 2013 discovery cut-off.   Petitioners' grossly dilatory conduct and abuse of the discovery process is part of a calculated effort to inject delay in the underlying litigation in hopes of receiving an extension to the discovery end date.  Regardless, Petitioners have unreasonably delayed and their Petition should be denied.

The Petition's request for information concerning MBFS's wheel and tire hazard insurance should also be denied because such information is wholly irrelevant to the underlying litigation, which has nothing to do with insurance and to which MBFS is not a party.  The underlying litigation concerns an alleged defect that purportedly causes certain wheels to "bend and crack under *normal* driving conditions."  (Dkt. 2 at 1) (emphasis added). Thus, discovery concerning MBFS's wheel and tire hazard insurance plans is irrelevant because such plans only cover damage due to "object[s] or condition[s] *not* normally found in

2

the roadway." (*See*, *e.g.*, Dkt. 2-28 at 2) (emphasis added).  The plans do *not* cover damage from defects, much less the alleged ones at issue in the underlying litigation.

In addition, Petitioners' requests for information concerning vehicles that customers sought to return or stop making payments on because of any type of wheel damage is vastly overbroad and burdensome.  Wheels can fail for many reasons having nothing to do with an alleged defect, including pot holes, debris, and accidents to name just a few.  Information concerning vehicles that customers sought to return or stop paying for (assuming there were any) because of wheel damage unrelated to an alleged defect has nothing to do with Petitioners' claims in the underlying litigation and is thus irrelevant.  Moreover, determining which vehicles were returned because of damage to wheels attributable to an alleged defect would be incredibly burdensome as MBFS's vehicle records would have to be searched and individually reviewed for responsive information.

The Petition is similarly overly broad and unduly burdensome to the extent it seeks information concerning vehicles leased or intended to be leased as "Certified Pre-Owned" ("CPO") but alleged to be unfit for such designation due to wheel damage.  MBFS has no involvement in determining which vehicles are sold as CPO, and thus has no ability to determine which vehicles are even implicated by such requests.

Finally, Petitioners' request for their Petition to be transferred to the District of New Jersey is improper.  Nothing in Rule 45 authorizes such a transfer.  Indeed, Rule 45(c)(1) expressly requires the *issuing* court to protect non-parties such as MBFS from undue burden and expense.

## I.    RELEVANT BACKGROUND

The underlying case was filed in the District of New Jersey on November 2, 2009. (**Exhibit 1**, Excerpt of Docket Sheet in *Luppino v. Mercedes-Benz USA, LLC*, No. 09-cv-5582

3

(D.N.J. 2009) ("*Luppino*").)  Petitioners bring claims on behalf of a putative nationwide class and allege that all 17-, 18-, and 19-inch wheels on Mercedes-Benz model year 2006 and later vehicles are defective in that they are prone to fail by bending, deforming, denting, warping or fracturing under "normal driving conditions."  (Dkt. 2-3 ¶ 2.)

MBFS is not a party to the underlying litigation and does not manufacture or distribute the subject vehicles or their wheels.  It is a separate entity from MBUSA and Daimler AG, the defendants in the underlying litigation.  MBFS offers owners and lessees of Mercedes-Benz vehicles wheel and tire hazard insurance coverage through its First Class Wheel and Tire Protection and First Class Wheel and Tire Protection Plus plans.  Such plans insure against damage caused by "road hazards" such as "nails, glass, potholes, rocks, tree limbs or any other object or condition not normally found in the roadway."  (Dkt. 2-26 at 2.)

On November 2, 2011, Petitioners served the 2011 Subpoena on MBFS, seeking production of documents in response to fifty separate requests, including documents relating to insurance offered through MBFS for damage to wheels.  (Dkt. 2-4 at 12 (Document Request 25).)  On November 15, 2011, MBFS agreed to produce documents relating to Petitioners and their vehicles, but otherwise objected to the requests or advised that it did not have responsive documents in its possession, custody, or control.  (Dkt. 2-5; Dkt. 2-6 at 2.)  On March 27, 2012, following a meet-and-confer conversation between counsel for Petitioners and MBFS, Petitioners offered to "narrow the scope" of the 2011 Subpoena and "simplify the process by creating new summary requests, with cross-references to the initial document requests that covered the same material."  (Dkt. 2-7 at 1.)  Petitioners, therefore, proposed eight "new" requests which combined many of the requests from the 2011 Subpoena to which MBFS had objected.  (*Id.* at 2-3.)  On May 30, 2012, MBFS agreed to produce brochures for its wheel and tire hazard insurance plans, but otherwise stated that it would stand on its previously asserted

objections. (Dkt. 2-9 ("We will not be in a position to produce any additional documents in response to the Subpoena and therefore our previously stated objections stand.").) Petitioners never took issue with MBFS's position or otherwise sought to enforce compliance with any aspect of the 2011 Subpoena.

On November 7, 2012, Magistrate Judge Joseph A. Dickson (D.N.J.) entered an Amended Pretrial Scheduling Order which, among other things, required fact discovery to be completed by January 14, 2013 and Petitioners to file their motion for class certification on February 13, 2013. (Dkt. 2-21.) This was the third time the scheduling order in the underlying litigation had been extended.

On January 2, 2013, Petitioners requested an extension of the January 14, 2013 discovery cut-off, arguing that purported discovery disputes with MBUSA and Daimler AG necessitated an extension. (**Exhibit 2** at 3, January 2, 2013 Letter from Petitioners' Counsel to the Court in *Luppino*.)

On January 4, 2013, just ten days before the operative discovery cut-off, Petitioners served the 2013 Subpoena on MBFS. (Dkt. 2-11 at ECF p. 23.) The 2013 Subpoena demanded production of documents responsive to 16 requests on January 7 and of a corporate representative on nine deposition topics on January 14, the exact end-date of the then-operative discovery deadline. (*Id.* at 10-18.) Of the 16 document requests, eight (numbers 1, 3-6, and 10-12) were substantively identical to the "summary requests" in Petitioners' March 27, 2012 letter, which in turn "covered the same material" as many requests from the 2011 Subpoena. (*See* Dkt. 2-7 at 1 n.1; *see also* **Exhibit 3** at 1-3, Comparison of 2013 Subpoena and March 27, 2012 Summary Requests.) In addition, the first three deposition topics in the 2013 Subpoena were also duplicative of summary requests in Petitioners' March 27, 2011 letter. (*See id.* at 4-6)

5

On January 4, 2013, MBFS objected to the 2013 Subpoena on the grounds that, among other things, the deposition topics and document requests were duplicative of previously served discovery, were untimely, were unduly burdensome, and/or sought information not relevant to the alleged defects and claims at issue in the underlying litigation.  (Dkt. 2-15.)

On January 14, 2013, Magistrate Judge Dickson extended the discovery cut-off until February 19, 2013.  (Dkt. 2-22 at ECF p. 7.)  Petitioners filed their Petition on February 7, 2013, more than a month after receiving MBFS's objections.

## II.  ARGUMENT

### A.  The Petition Is Untimely Because the Requests Are Duplicative Of Previously Served Discovery and/or Were Served at the Tail-end of Discovery

It is axiomatic that "[i]f the moving party has unduly delayed [in bringing a motion to compel], the court may conclude that the motion is untimely."  8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2285 (1994 & Supp. 1998).  Here, Petitioners have unduly delayed by waiting more than a year to seek enforcement of many requests and moving to compel as to others at the tail-end of discovery, without adequate time for production.  Their Petition should, therefore, be denied in its entirety.

#### 1.  Petitioners Have Delayed More than a Year in Seeking to Enforce Many Requests

First, the Petition to enforce requests 1, 3, 4, 5, 6, 10, 11, and 12 and deposition topics 1, 2, and 3 is untimely because they are duplicative of requests MBFS objected to more than a year ago in responding to the 2011 Subpoena.  The above document requests are virtually identical to the "summary requests" in Petitioners' March 27, 2012 letter, which Petitioners concede "covered the same material" as requests 4-8, 12, 13, 16, 21, 22, 25-27, 30-33, 35, 38, 39, 42-44, and 47 from the 2011 Subpoena.  (*See* Dkt. 2-7 at 1 n.1; Exhibit 3 at 1-3 Comparison Chart of

2013 Subpoena and Summary Requests from March 27, 2012 Letter).)[1]  MBFS objected to those

requests from the 2011 Subpoena on November 15, 2011—agreeing to produce documents

specifically relating to Petitioners—and reiterated on May 30, 2012 that it would stand on its

objections and not produce additional documents.  (Dkt. 2-9.)

      Despite knowing of MBFS's objections to this discovery since November, 2011,

Petitioners inexplicably delayed until February, 2013—on the eve of the discovery cut-off—to

seek enforcement of those requests.  This protracted delay of ***more than a year*** is far longer than

what many courts in similar circumstances have found to constitute undue delay warranting

denial of a motion to compel.  *See*, *e.g.*, *Hyland v. Homeservices of Am., Inc.*, 2012 U.S. Dist.

LEXIS 67028, at *20-*21 (W.D. Ky. May 14, 2012) (denying motion to compel where

"Plaintiffs were aware of Defendants' objections to the discovery requests for six months before

filing a motion to compel")[2]; *West v. Miller*, 2006 U.S. Dist. LEXIS 56243, at *13-*17 (N.D. Ill.

Aug. 11, 2006) (delay of four months in moving to compel further discovery responses

constituted undue delay);  *Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Servs. N. Am.,*

*L.L.C.*, 2004 U.S. Dist. LEXIS 26861, at *13 (N.D. Ill. Dec. 29, 2004) (motion to compel filed

after thirteen months of inaction was "a clear case of too little, too late"); *Anco Eng'g. Co. v. Bud*

*Radio, Inc.*, 1963 U.S. Dist. LEXIS 10461 (D. Ohio Dec. 17, 1963) (delay of nine months in

moving to compel further answers to interrogatories was unreasonable); *In re Sulfuric Acid*

*Antitrust Litig.*, 231 F.R.D. 331, 341 (N.D. Ill. 2005) (eight month delay in bringing motion to

compel was unreasonable where "plaintiffs were aware that they were not going to get any

answers to interrogatories, and that the document production GAC was willing to make . . .

---

[1] Deposition topics 1 through 3 similarly cover the same topics as several of the March 27, 2012 "summary requests" and duplicative document requests in the 2011 Subpoena.  (Exhibit 3 at 4-6.)
[2] All unpublished cases are attached hereto as **Exhibit 4.**

would never be compliant with their requests"); *see also Audi AG v. D'Amato*, 469 F.3d 534, 541-42 (6th Cir. 2006) ("[D]elay of two-and-a-half months is dilatory.").

The unreasonableness of Petitioners' delay is also confirmed by their failure to justify waiting more than a year to seek enforcement of the 2011 Subpoena (albeit under the guise of enforcing the 2013 Subpoena). Petitioners misleadingly suggest that they delayed bringing their motion because the Magistrate Judge had directed them to first learn relevant information about MBUSA's internal operations through Rule 30(b)(6) depositions. (Dkt. 2 at 4) But the truth is that the Magistrate Judge advised Petitioners to take such depositions to learn more about the issue of MBUSA's interactions with its *dealerships* before they proceeded with third party discovery of certain dealerships. (Dkt. 2-10 at 17:15-19 ("I want you to produce some 30(b)(6) witness [sic] . . . regarding the subject matter contained in these *dealer* subpoenas." (emphasis added).) The delay had nothing to do with potentially eliminating the need for discovery from MBFS. This is confirmed by the fact that the depositions had virtually nothing to do with the information Petitioners now seek to compel from MBFS. The Rule 30(b)(6) depositions of MBUSA's representatives lasted seven days over the course of three months and totaled more than a thousand pages of transcript, but barely a few pages relate to MBFS. In short, the discovery Petitioners have conducted in the past year cannot possibly justify their inordinate delay in bringing this motion. *See West*, 2006 U.S. Dist. LEXIS 56243 at *16-*17 (motion to compel was untimely in light of movant's "four months of discovery inaction" and "foregone opportunities" to pursue the sought-after information by other means).

Furthermore, even if Petitioners could truthfully claim that they only learned through deposing MBUSA that MBFS was the sole source of the information they now seek, *see* Dkt. 2 at 5, that would still not justify their delay in moving to compel. At best, their decision to spend months deposing MBUSA without moving to compel was a "gamble" that they could avoid

having to enforce the 2011 Subpoena. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 341. "But as with all rolls of the dice, there are consequences[,]" and the fact that their gamble proved unwise "is not an excuse for inaction under the Federal Rules of Civil Procedure." *Id.*

The supposed relevance of these requests further illuminates Petitioners' dilatory conduct. Petitioners claim the information they seek is of "clear relevance" to the underlying litigation. (Dkt. 2 at 1; *see also id.* at 3 (conceding that in **March 2012** it was "clear [to Petitioners] that they needed [MBFS] documents that would relate to members of the Class"). But if that were the case (it is not), their failure to move to compel sooner only becomes more inexcusable. In truth, their decision to delay this Petition by more than a year only highlights the requests' ***lack*** of relevance and the lack of prejudice that would result from a denial of their Petition. *See Hyland*, 2012 U.S. Dist. LEXIS 67028, at *20-*21 (plaintiffs were not prejudiced by denial of motion to compel filed six months after defendants served their discovery objections); *Ginett v. Fed.l Express Corp.*, 1998 U.S. App. LEXIS 27659, *15-*16 (6th Cir. Oct. 21, 1998) (similar).

### 2.    Petitioners Unduly Delayed By Filing the Petition at the Tail-end of Discovery

Second, the Petition on the whole is untimely because Petitioners have unduly delayed by serving the 2013 Subpoena and seeking to enforce it at the tail-end of discovery, without adequate time for completion.

It is well established that "[w]here a party has waited to bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion." *Ridge Chrysler Jeep*, 2004 U.S. Dist. LEXIS 26861 at *13 (motion to compel filed four days prior to the close of discovery was untimely); *Hyland*, 2012 U.S. Dist. LEXIS 67028, at *19 (same, as to motion filed ten days before the close of discovery); *West*, 2006 U.S. Dist. LEXIS 56243, at *16

(same, as to motion to compel filed eleven days before close of discovery).  This is especially true where the movant has acted dilatorily in bringing the motion, *id.* at \*16, or where the motion is "filed so late as to make it impossible to conduct the requested discovery within the discovery period," *Ridge Chrysler Jeep*, 2004 U.S. Dist. LEXIS 26861 at \*19.

Here, the 2013 Subpoena was served and the Petition was filed so close to the operative discovery deadlines as to constitute undue delay warranting denial of the Petition.  Petitioners did not serve the 2013 Subpoena until ten days before the operative January 14, 2013 deadline.  And even when the discovery deadline was extended until February 19, they did not file the Petition until February 7—more than a month after receiving MBFS's objections and just twelve days before the February 19 discovery cut-off.  As a result of Petitioners' delays, neither the requested discovery nor the briefing on the Petition itself could be completed within the discovery deadline. *See Ridge Chrysler Jeep*, 2004 U.S. Dist. LEXIS 26861 at \*19.

Moreover, Petitioners have no excuse for waiting until the end of discovery to serve the 2013 Subpoena and seek its enforcement.  This litigation is in its fourth year, and Petitioners do not claim they were unaware of their supposed "need" for the information they seek until late in the litigation.  Indeed, Petitioners characterize such information as "***unquestionably*** relevant" to the underlying litigation.  Dkt. 2 at 11 (emphasis added).

Petitioners' only excuse for waiting until January 4, 2013 to serve the 2013 Subpoena appears to be their purported belief that they could obtain the sought-after information by deposing MBUSA.  (Dkt. 2 at 4-5.)  Yet, the truthfulness of this claim is belied by their failure to conduct meaningful discovery about MBFS through the MBUSA depositions.  The only logical explanation for Petitioners' delay in seeking to enforce the 2013 Subpoena is that it is part of their strategic effort to extend the discovery deadline in the underlying litigation. *See Hyland*, 2012 U.S. Dist. LEXIS 67028 at \*22 ("Plaintiffs have provided no justification for their dilatory

efforts. Thus, the Court can only presume that Plaintiffs' delay was for strategic reasons.");

*Everett v. Aldi, Inc.*, 2009 U.S. Dist. LEXIS 28877, at *9-*10 (N.D. Ind. Apr. 6, 2009) ("[A]

cynic might think that [filing a motion to compel on the last day of the discovery period] was a

calculated decision to effect another extension of the discovery deadline.") (citations omitted).

But even if there were truth to Petitioners' claim, their strategy at best amounted to a gamble that

they could avoid having to obtain discovery from MBFS.  Regardless of the motive for

Petitioners' delay, "the result is the same."  *In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527,

535 (N.D. Ill. 2005).  The Petition must be denied.  *Id.*

> **B.  The Information Sought in the 2013 Subpoena is Irrelevant to the Underlying Litigation and/or Not in MBFS's Possession, Custody, or Control**
>
> > **1.  Documents and Information Concerning MBFS's Wheel and Tire Hazard Plans are Irrelevant Because Such Plans Do Not Cover Defects**

Document requests 1 through 12 and deposition topics 1 through 6 seek various types of

information concerning MBFS's wheel and tire hazard insurance plans, including but not limited

to: (1) the terms, scope of coverage, and pricing of such plans (document requests 1, 2, and 3 and

deposition topics 1(a)-(c) and 2); (2) administration of such plans (document requests 4, 7, and 8

and deposition topics 4 and 5); (3) claims for coverage under such plans (document requests 5, 6,

10, 11, and 12 and deposition topics 1(d)-(e) and 3); and (4) profits and revenues generated from

the sale of such plans (document requests 8, 9 and 10 and deposition topic 6).

However, none of these requests seek information relevant to the underlying litigation.

The reason is simple: MBFS's wheel and tire hazard plans do ***not*** insure against defects, much

less the alleged ones at issue.  In the underlying litigation, Petitioners assert a claim for breach of

warranty; the warranty at issue covers verified defects in materials or workmanship.  But the

insurance covers damage to tires and/or wheels due to road hazards (*i.e.*, not due to defects).

The irrelevance of such plans to the underlying litigation is apparent from the face of the Petition.  The underlying litigation is based on Petitioners' allegation that certain wheels on defendants' vehicles are "defective," such that they "bend and crack under **normal** driving conditions."  Dkt. 2 at 1 (emphasis added).  MBFS's wheel and tire hazard plans, however, only cover damage that occurs from road hazards "***not normally found in the roadway***."  (*See, e.g.*, Dkt. 2-26 at 2 (emphasis added).)  MBFS's wheel and tire plans, therefore, do ***not*** cover damages occurring as a result of a defect or "normal" driving conditions, and they have nothing to do with the alleged defect or claims at issue.  The myriad types of information that Petitioners seek regarding MBFS's plans are simply irrelevant to the underlying litigation and not a legitimate subject of discovery.

For example, Petitioners are simply wrong in claiming that documents "showing . . . a higher rate of claims, and/or higher loss ratio . . . would all support [their] allegations that the subject wheels failed due to a design defect."  (Dkt. 2 at 12.)  To the contrary, such claims would only show that wheels or tires experienced damage as a result of ***road hazards***—which are not defects and cannot be a basis for Petitioners' claims.  Petitioners also erroneously assert that revenue generated by the sale of MBFS's plans is relevant because "[i]f Defendants were not selling defective wheels, fewer customers would purchase this coverage."  (Dkt. 2 at 13.)  It is nonsensical to suggest that the number of plans sold to cover damage from things ***other than a defect*** is at all probative of whether Defendants sold defective wheels.

In short, MBFS's wheel and tire hazard plans are irrelevant to the underlying litigation and the Petitioners' requests for information concerning them should be denied.

>    **2.    Requests Concerning Vehicles that Customers Sought to
>            Return or Stop Paying for on Account of Wheel Damage are
>            Overbroad and Unduly Burdensome**

Document requests 13 and 14 and deposition topic 7 seek information concerning attempts by customers to terminate vehicle leases or stop making payments due to allegedly damaged wheels.  Such requests are overly broad and unduly burdensome for a host of reasons.

First, requests for documents concerning customer requests to terminate leases or stop making payments because of alleged wheel damaged are vastly overbroad and seek irrelevant information because wheels can be damaged for myriad reasons unrelated to an alleged defect. *See*, *e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3rd Cir. 2012) ("Even 'defective' tires can go flat for reasons completely unrelated to their defect[.]").  As MBFS's wheel and tire hazard plans themselves indicate, debris such as "nails, glass, potholes, rocks, [and] tree limbs" are just some of the many things that can damage a wheel while having nothing to do with a defect.  Thus, the number of vehicles that customers have allegedly sought to return or discontinue payments on due to alleged wheel damage, *see* Dkt. 2-11 at 15-16 (document requests 13(a) and 14(a) and (c)), is vastly overinclusive and not probative at all of the existence or extent of the alleged defect.  The same is also true as to the financial impact of vehicles allegedly returned to MBFS on account of any and all types of wheel damage.  *See id.* at 15-16 (document requests 13(b) and 14(b) and (d)).

Second, even if these requests were limited to vehicles with the alleged defect, they would still be unduly burdensome because they would require countless individualized inquiries to (1) identify customers who sought to return a vehicle to MBFS and (2) determine whether they did so because of an allegedly defective wheel.  MBFS's computer systems do not allow it to simply retrieve accounts of customers who returned or sought to return a vehicle to MBFS on account of wheel damage, much less wheel damage related to the alleged defect, as customer

accounts are not pre-labeled or designated as meeting such criteria. Rather, MBFS would have to search and individually review its customers' accounts to determine which ones meet such criteria. This, of course, would require fact-intensive individual inquiries to determine whether a customer sought to return a vehicle on account of defective wheels, as opposed to wheels damaged through another cause such as a pot-hole, debris, accident, etc.

This process would be further complicated and made more burdensome by the limitations in the text-searching capabilities of MBFS's customer service accounts. Searches for words such as "wheel" and "rim" would generate results wherever such letters appear—even as part of common but completely irrelevant words and phrases such as "primary phone number," "trim," and "Wheeling, PA." Results generated by such searches, therefore, would be significantly overinclusive, requiring MBFS to manually review countless individual account entries just to eliminate those with no possible relevance to the subpoena.

In addition, any results generated from this burdensome task would be of no probative value as MBFS is not a party to the underlying litigation and MBUSA has already produced warranty claims and other information concerning damaged wheels. The information Petitioners seek from MBFS—even assuming it could be retrieved—would simply be duplicative of what they have already received.

While Petitioners' requests are unduly burdensome in their own right, they are especially inappropriate when directed towards a non-party such as MBFS. Rule 45(c)(1) requires that the party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.* Because Petitioners' overly broad requests would impose significant burdens on MBFS only to generate duplicative information, Rule 45 requires that the Petition be denied.

3.     **Requests for Information Concerning Vehicles Alleged to be Unfit For the Certified Pre-Owned Program Are Overbroad and Unduly Burdensome**

Document requests 15 and 16 and deposition topics 8 and 9 seek information concerning vehicles that either dealerships or customers allege were unfit to be classified and sold as Certified Pre-Owned vehicles because they had damaged wheels.  (Dkt. 2-11 at 12, 16-18.)  Such requests suffer from the same deficiencies as Petitioners' overbroad and unduly burdensome requests concerning vehicles that customers sought to return to MBFS or stop paying for on account of wheel damage.  First, these requests are overly broad because they are not limited to complaints of wheel damage attributable to the alleged defect.  They would instead require MBFS to produce irrelevant information concerning wheels damaged by potholes, accidents, and other causes not in any way related to the alleged defect.  Second, even if limited to complaints of the alleged defect, the requests relating to the CPO program would similarly require MBFS to conduct burdensome individualized reviews of countless customer and vehicle accounts to identify which vehicles received dealership or consumer complaints regarding damage wheels.  Additional analysis would then be required to determine which, if any, of those complaints related to damage caused by the alleged defect.

Finally, and most notably, MBFS is not able to produce documents or other information of the type requested by Petitioners because MBFS has absolutely no role in determining whether a vehicle meets the criteria to be sold or leased as a Certified Pre-Owned Mercedes-Benz vehicle.  For example, document request 15 seeks certain categories of information "relating to Vehicles *intended* for sale or lease through the CPO Program, which Mercedes-Benz Dealers declined to accept for sale or lease from MBFS" due to damaged wheels.  Dkt. 2-11 at 16 (emphasis added); *see also id.* at 12 (deposition topic 8).  However, MBFS is not involved in determining whether a vehicle's condition qualifies it for a CPO designation, nor is it involved in

the decision of whether to sell or lease a vehicle with such a designation.  Such determinations and decisions are made entirely at the dealership level, without MBFS's involvement.  As a result, MBFS does not have documents responsive to this request because it does not deliver vehicles to a dealership "intending" them to be sold or leased through the CPO program.

Similarly, document request 16 calls for production of certain information "relating to Vehicles that were sold or leased through the CPO Program that . . . customers alleged had been sold or leased to them" with damaged wheels.  Dkt. 2-11 at 17; *see also id.* at 12 (deposition topic 9).  However, MBFS is unable to produce documents responsive to this request because it does not know which vehicles "were sold or leased through the CPO program."

### C.    Rule 45 Does Not Permit Transfer of the Petition to the District of New Jersey

Petitioners' request that the Petition be transferred to the District of New Jersey should be denied because Rule 45 does not permit the issuing court to transfer the motion to compel, especially where, as here, the subpoenaed party does not consent to the transfer.

Petitioners claim that transfer of their Petition to the District of New Jersey is appropriate, but "[i]t is clear that this Court cannot shirk its responsibility to decide issues arising from the service of a subpoena on a non-party who resides in this District simply by transferring the proceedings to the court in which the underlying litigation is pending."  *Prosonic Corp. v. Baker*, 2008 U.S. Dist. LEXIS 36035, *2-*3 (S.D. Ohio Apr. 7, 2008).  Indeed, a number of circuits have held that Rule 45 does not permit a court that issued a subpoena to transfer a related discovery motion to the district where the underlying litigation is pending.  *See*, *e.g.*, *In re Sealed Case*, 141 F.3d  337, 341 (D.C. Cir. 1998) (Rule 45 "offers no authorization to transfer a motion to quash [a subpoena] and seems at least implicitly to forbid it."); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir.1996) (rejecting transfer of third party discovery

16

dispute and noting the lack of "any provision in the Judicial Code or the Rules of Civil Procedure [that] allows a district judge to transfer a particular motion for decision elsewhere"); *see also Dow Chem. Can., Inc. v. HRD Corp.*, 2010 U.S. Dist. LEXIS 66374, at \*9-\*10 (S.D. Tex. July 2, 2010) (finding that Rule 45 did not authorize issuing court to transfer motion to compel). Moreover, Rule 45(c)(1) specifies that "[t]he issuing court ***must*** enforce" the serving party's duty to avoid imposing undue burden and expense on a non-party from whom discovery is sought.

It is also irrelevant whether transfer of a motion to the district court presiding over the underlying litigation would be more efficient due to that court's greater familiarity with the case. "Congress in the Rules has clearly been ready to sacrifice some efficiency in return for territorial protection for nonparties." *In re Sealed Case*, 141 F.3d at 341.

In short, Rule 45 does not permit the Petition to be transferred to the District of New Jersey and, indeed, requires this Court to ensure that the subpoena does not impose undue burden or expense on MBFS. This is especially true here, where MBFS does not consent to the transfer and wishes to have the Petition adjudicated by the issuing court. *Dow Chem. Can., Inc.*, 2010 U.S. Dist. LEXIS 66374, at \*10 ("[M]any courts have found transfer appropriate only when the party opposing the subpoena has consented to the transfer or otherwise expressly submitted to the jurisdiction of that court.") (collecting cases). MBFS's employees and officers should not be burdened with traveling to New Jersey simply because it is more convenient for Petitioners. If that were the touchstone, Rule 45 would allow for extra-jurisdictional issuance of subpoenas. But Rule 45 expressly does not. Petitioners' request that this dispute be transferred to the District of New Jersey must be denied.

## CONCLUSION

For the above-stated reasons, the Petition to enforce the 2013 Subpoena or transfer it to the District of New Jersey should be denied.

February 22, 2013                          **WARNER NORCROSS & JUDD LLP**


                                           */S/      Katherine L. Brooks*
                                           Michael G. Brady (P57331)
                                           Katherine L. Brooks (P74511)
                                           2000 Town Center, Suite 2700
                                           Southfield, MI 48075
                                           Telephone: (248) 784-000
                                           mbrady@wnj.com
                                           kbrooks@wnj.com

                                           Liaison Counsel for Respondent Mercedes-
                                           Benz Financial Services USA LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2013, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following: Paul F. Novak, and I hereby certify that I have mailed by United States Postal Service

the paper to the following non-ECF participants: None.


**WARNER NORCROSS & JUDD LLP**


*/S/ Katherine L. Brooks*

Katherine L. Brooks (P74511)
2000 Town Center, Suite 2700
Southfield, MI 48075
Telephone:     (248) 784-5000
kbrooks@wnj.com

Liaison Counsel for Respondent Mercedes-
Benz Financial Services USA LLC