UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT LUPPINO, CLIFF
STERN, JOHN CASIERO, and
NOEL J. SPIEGEL,

       Case No. 13-50212

   Petitioners,

v.       Honorable David M. Lawson
       Magistrate Judge Laurie J. Michelson

MERCEDES-BENZ FINANCIAL
SERVICES USA, LLC,

   Respondent.
_____/

# REPORT AND RECOMMENDATION ON PETITIONERS' MOTION TO ENFORCE SUBPOENA [1]

This ancillary proceeding to enforce a third-party subpoena arises out of a putative class action lawsuit pending in the District of New Jersey, *Luppino, et al. v. Mercedes-Benz USA, LLC et al.*, No. 09-5582 (D.N.J. filed Nov. 2, 2009). Petitioners Vincent Luppino, Cliff Stern, John Casiero, and Noel J. Spiegel ("Plaintiffs"), and the consumer class they seek to represent, claim that they purchased or leased Mercedes-Benz vehicles with wheels that are defective and fail under normal driving conditions. Plaintiffs assert breach of warranty and New Jersey Consumer Fraud Act claims against Defendants Daimler AG ("Daimler"), the manufacturer of the Mercedes-Benz branded vehicles, and Mercedes-Benz USA, LLC ("MBUSA"), the authorized distributor of the vehicles in the U.S. (Dkt. 2, Pls.' Mem. to Compel at 1, n.2.)

In connection with the *Luppino* litigation, Plaintiffs seek third-party discovery from Michigan-based Mercedes-Benz Financial Services USA, LLC ("MBFS"), a Daimler subsidiary involved in the sale and leasing of Mercedes-Benz vehicles with the allegedly defective wheels. (*Id.* at 1.) According to Plaintiffs, "[w]ith a few exceptions . . . MBFS has refused to produce

documents in response to [their] requests," and thus, they "now ask this Court to compel MBFS to produce documents in response to the subpoena and to designate a witness for a deposition pursuant to Rule 30(b)(6)." (*Id.*) MBFS opposes the motion to enforce the subpoena on the grounds that it is untimely and that the subpoena is overly broad, unduly burdensome, and seeks irrelevant information. (Dkt. 6, Resp. at 1.) Plaintiffs' motion was referred to this Court for hearing and determination pursuant to 28 U.S.C. § 636(b). (Dkt. 3.) The motion is fully briefed (Dkts. 6, 7), and the Court heard oral argument on April 3, 2013.

For the reasons set forth below, the Court RECOMMENDS that Plaintiffs' motion be GRANTED IN PART AND DENIED IN PART.

I. **BACKGROUND**

   A. **The Allegations In The Underlying Lawsuit**

Plaintiffs allege, on behalf of a nationwide class, that all 17-, 18-, and 19-inch wheels on Mercedes-Benz vehicles model year 2006 and later are prone to fail by bending, deforming, denting, warping or fracturing under "normal driving conditions." (Mem. to Enforce, Ex. B, Third Am. Compl., ¶¶ 2, 54.) The wheel failures purportedly result from their defective design and/or manufacture. Plaintiffs allege that despite these defects and resulting failures, MBUSA refused to repair or replace the wheels under its warranty to "make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period." (*Id.* at ¶¶ 57, 62). Thus, say Plaintiffs, consumers had to pay out-of-pocket to replace the defective wheels. (*Id.* at ¶ 63.) Plaintiffs further allege that Defendants misrepresented in promotional materials that the wheels would operate effectively. (*Id.* at ¶ 4.) In defense, Daimler and MBUSA contend that each of the wheel failures alleged in the Complaint resulted from specific circumstances unique to that

2

driver and/or vehicle, not a uniform defect. (Mem. to Enforce at 2.)

### B. The Role of MBFS

Non-party Mercedes-Benz Financial Services ("MBFS") provides financing to customers who purchase Mercedes Benz vehicles and operates the leasing program for customers who lease their vehicles. (Mem. to Enforce at 2.) MBFS also operates the certified pre-owned ("CPO") program, pursuant to which used Mercedes-Benz vehicles are sold to authorized Mercedes-Benz dealers for re-sale to customers. (*Id.*) Additionally, MBFS offers owners and lessees of Mercedes-Benz vehicles wheel and tire hazard insurance coverage through its First Class Wheel and Tire Protection and First Class Wheel and Tire Protection Plus plans. (Resp. at 4.) These plans insure against damage caused by "road hazards" such as "nails, glass, potholes, rocks, tree limbs or any other object or condition not normally found in the roadway." (Mem. to Enforce, Ex. Y.) In other words, these insurance plans provide coverage for damage to wheels that are not caused under normal driving conditions.

### C. Procedural History Regarding Subpoenas To MBFS

In pursuing their claims in the underlying *Luppino* litigation, Plaintiffs seek discovery indicating that problems with the Mercedes-Benz wheels are widespread – i.e., problems attributable to a uniform design defect and not simply the circumstances unique to Plaintiffs and/or their vehicles. (Mem. to Enforce at 2.) As a result of MBFS' involvement with the sale and leasing of Mercedes-Benz vehicles that allegedly contain defective wheels, Plaintiffs believe they may have relevant information. Accordingly, on November 2, 2011, Plaintiffs served their first Subpoena on MBFS (the "2011 Subpoena"), seeking production of documents in response to fifty separate requests, including documents relating to insurance offered through MBFS for damage to wheels.

(*Id.*, Ex. C.) On November 15, 2011, MBFS agreed to produce documents relating to the named Plaintiffs and their vehicles, but otherwise objected to the requests (on relevance and overbreadth grounds) or advised that it did not have responsive documents in its possession, custody, or control. (*Id.*, Exs. D and E.) Following subsequent discussions among the parties, Plaintiffs narrowed their requests in a March 27, 2012 letter. (*Id.*, Ex. F.) On May 30, 2012, MBFS agreed to produce brochures for its wheel and tire hazard insurance plans, but otherwise stated that it would stand on its previously asserted objections. (*Id.*, Ex, H.) At that time, Plaintiffs did not seek to further enforce compliance with the 2011 Subpoena. (MBFS Resp. at 4-5.)

Plaintiffs explain that, for the next several months, they pursued other discovery in the underlying (*Luppino*) lawsuit. (Mem. to Enforce at 4.) This included electronically stored information ("ESI") from MBUSA and third-party discovery from Mercedes-Benz dealerships regarding wheel replacements. (*Id.*) At the direction of the New Jersey Magistrate Judge overseeing the discovery in the *Luppino* litigation, Plaintiffs took 30(b)(6) depositions of MBUSA to determine whether certain information should be produced by MBUSA or its dealers. (*Id.*) These depositions continued through November of 2012. According to Plaintiffs,

> [i]t was only after taking the 30(b)(6) depositions that Petitioners fully understood that MBUSA has little – if any – knowledge regarding wheel and tire insurance offered to consumers who purchase or lease Mercedes-Benz vehicles. Additionally, it became clear that MUBSA's employees would not have knowledge regarding the vehicles with defective wheels that were deemed unfit for sale (*i.e.*, resale) though the CPO program.

(*Id.* at 5.)

Thus, on January 4, 2013, ten days before the discovery cut-off date in the most recent *Luppino* scheduling order (Mem. to Enforce, Ex. T), Plaintiffs served a second Subpoena on MBFS

4

(the "2013 Subpoena"). (Resp. at 5.) By that time, Plaintiffs had also requested an extension of the impending January 14, 2013 discovery cut-off. (Resp. at Ex. 2.) The 2013 Subpoena requested documents responsive to sixteen requests by January 7, 2013 and the deposition of a corporate representative on nine topics on January 14, 2013. (Mem. to Enforce, Ex. J.) According to MBFS, many of the document requests and deposition topics in the 2013 Subpoena were identical to the information sought in the 2011 Subpoena. (Resp. at 5, Ex. 3.) Thus, on January 4, MBFS objected to the 2013 Subpoena on the grounds that, among other things, the deposition topics and document requests were duplicative of previously served discovery, were untimely, were unduly burdensome, and/or sought information not relevant to the alleged defects and claims at issue in the underlying litigation. (Mem. to Enforce, Ex. N.)

On February 7, 2013, after MBFS declined to consent to jurisdiction in the District of New Jersey, Plaintiffs filed a Petition to Enforce the 2013 Subpoena in this Court. (Dkt. 1.) Plaintiffs seek to compel MBFS to produce documents pertaining to its insurance program and complaints about vehicles with damaged wheels, and to designate a witness for a deposition pursuant to Rule 30(b)(6). (*Id.*)

## II.     ANALYSIS

### A.     Procedural Issues

Before addressing the substance of MBFS' objections to the 2013 Subpoena, the Court must resolve a number of procedural issues.

#### *1.     Report and Recommendation v. Order*

"A motion to quash a subpoena is usually a nondispositive matter; but where, as here, the decision would dispose of the entire matter at issue in this case, the order is more properly treated as subject to *de novo* review." *Hartford Fire Ins. Co. v. Transgroup Express, Inc.*, No. 09-3473, 2009 U.S. Dist. LEXIS 78982, at *2-3 (N.D. Ill. Sept. 1, 2009). In this case, like those involving administrative or governmental subpoenas, Plaintiffs' motion to compel production of documents and a witness pursuant to the 2013 Subpoena is the entire proceeding before this Court – *i.e.*, the decision whether to enforce the Subpoena will finalize this district court proceeding. As such, the Court will treat the motion as dispositive and proceed by a report and recommendation. *See EEOC v. Nestle Prepared Foods*, No. 11-358, 2012 U.S. Dist. LEXIS 71864, at *4-5 (E.D. Ky. May 23, 2012) ("Because the EEOC's motion to enforce the subpoena sets forth all of the relief requested in this matter, the Court views it as a dispositive motion."); *EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 987 (D. Minn. 2010) ("[A]n application to enforce an administrative subpoena *duces tecum*, where there is no pending underlying action before the Court, is generally a dispositive matter, and therefore, when a Magistrate Judge considers such an application, the district court reviews the Magistrate Judge's determinations *de novo*."); *In re: Administrative Subpoena Blue Cross Blue Shield of Mass.*, 400 F. Supp.2d 386, 388-89 (D. Mass 2005) ("Many courts have treated similar motions to enforce or quash administrative subpoenas, or the like, as dispositive motions for

6

purposes of review where the matter involving the subpoena constitutes the entire case before the court." (collecting cases)).

### 2. *Transfer to the District of New Jersey*

Plaintiffs request that this Court transfer the Petition to the District of New Jersey where the underlying litigation is pending. They contend that while such a transfer is particularly appropriate when the parties jointly request it, mutual consent is not required. (Mem. to Enforce at 2, n.3.) MBFS disagrees. They contend that "Rule 45 does not permit the Petition to be transferred to the District of New Jersey and, indeed, requires this Court to ensure that the subpoena does not impose undue burden or expense on MBFS . . . . MBFS's employees and officers should not be burdened with traveling to New Jersey simply because it is more convenient for [Plaintiffs]." (Resp. at 17.) The Court does not understand how this subpoena dispute would require anyone other than MBFS' counsel to travel to New Jersey. Where the Petition is decided is not necessarily the jurisdiction where the discovery will be conducted.

But irrespective of the efficiencies in having this discovery dispute brought before the court that has been handling the discovery for the last four years, the Petition should be decided by this Court. While it does not appear that the Sixth Circuit has addressed this specific issue, another court recently summarized the state of the law as follows:

> Courts applying Rule 45 have held that "any controversies regarding the production of documents from nonparty witnesses shall be decided in the court which issued the subpoena, unless the nonparty consents to determination elsewhere." (citations omitted.)
>
> Courts have disagreed about whether an issuing court has authority to transfer a motion to quash to the court presiding over the case. Some courts have interpreted Rule 45 as "offer[ing] no authorization to transfer a motion to quash and seem[ing] at least implicitly to forbid it." *In re Sealed Case*, [141 F.3d 337, 341 (D.C. Cir. 1998)];

> *see also In re Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996) (rejecting transfer of discovery disputes); *Prosonic Corp. v. Baker*, 2008 U.S. Dist. LEXIS 36035, 2008 WL 1766887, at *1-2 (S.D. Ohio Apr. 7, 2008) ("It is clear that this Court cannot shirk its responsibility to decide issues arising from the service of a subpoena . . . simply by transferring the proceedings to the court in which the underlying litigation is pending."). Other courts have upheld an issuing court's authority to transfer a discovery motion to the district where the underlying litigation is pending. *See, e.g., In re Digital Equip. Corp.*, 949 F.2d 228, 231 (8th Cir.1991) (stating that court issuing subpoenas pursuant to Rule 45 may remit consideration of objections to court where underlying case is pending); *Petersen v. Douglans County Bank & Trust Co.*, 940 F.2d 1389, 1391 (10th Cir. 1991) (finding nothing improper where the court issuing the subpoena transferred a motion to compel to district with jurisdiction over underlying litigation) . . . .
>
> The text of Rule 45 does not offer secure support for an issuing court to transfer a motion to quash or compel subpoenas to another court, even if the underlying action is pending in that court and the motion is closely related to the substance of the pending action. As the D.C. Circuit observed, the text of Rule 45, "suggests that only the issuing court has the power to act on its subpoenas." *In re Sealed Case*, 141 F.3d at 341. In addition to questions of authority under the Rules, there are issues of personal jurisdiction that arise in addressing subpoenas in distant districts. Under the current rules, even if separating the motions to quash from the rest of the action is not the most efficient approach, "Congress in the Rules has clearly been ready to sacrifice some efficiency in return for territorial protection for nonparties." *Id.* at 342 . . . . For this reason, many courts have found transfer appropriate only when the party opposing the subpoena has consented to the transfer or otherwise expressly submitted to the jurisdiction of that court. (citations omitted.)

*Dow Chem. Can., Inc. v. HRD Corp*., No. 10-0138-0144, 2010 U.S. Dist. LEXIS 66374, at *6-10 (S.D. Tex. July 2, 2010).

As MBFS opposes transfer to New Jersey and the 2013 Subpoena was issued out of the Eastern District of Michigan, the Petition should be decided in this Court.

### *3. Timeliness of the Petition*

MBFS contends that the Petition to Enforce the 2013 Subpoena should be denied as untimely. According to MBFS, several of the document requests and deposition topics in the 2013 Subpoena are duplicative of requests in the 2011 Subpoena that MBFS objected to over one year ago. (Resp. at 6-7.) MBFS appears to be arguing that because Plaintiffs took no action on the objections back in 2011, they are precluded from doing so in 2013. While there is some overlap, these are separate subpoenas. Rather than challenge MBFS' objections in 2011, Plaintiffs decided to pursue other discovery options. When these other means proved unfruitful, they served a new subpoena. MBFS cites no authority indicating this procedure is improper, or that the timeliness of a motion to compel must be measured from the first subpoena. *See* Fed. R. Civ. P. 45(c)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.")

MBFS also contends that "the Petition on the whole is untimely because Petitioners have unduly delayed by serving the 2013 Subpoena and seeking to enforce it at the tail-end of discovery, without adequate time for completion." (Resp. at 9.) This Court disagrees.

"In considering whether a Rule 45 subpoena constitutes discovery (subject to the applicable discovery deadline), the majority of courts . . . have answered yes." *Fleetwood Transp. Corp. v. Packaging Corp. of Am.*, No. 11-45, 2011 U.S. Dist. LEXIS 142830, at * 4 (M.D.N.C. Dec. 12, 2011); *see also Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case."); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 445 (D. Minn. 1997) (subpoenas under Rule 45, invoking the authority of the court

to obtain the pretrial production of documents and things, are discovery within the definition of Fed. R. Civ. P. 26(a)(5) and are therefore subject to the time constraints that apply to all other methods of formal discovery); *Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001) (stating that "[m]ost courts hold that a subpoena seeking documents from a third-party under Rule 45(a)(1)(C) is a discovery device and therefore subject to a scheduling order's general discovery deadlines.").

Here, the Subpoena at issue was served on January 4, 2013. This was ten days before the scheduled discovery cut-off date. Thus, while close, it was served within the discovery period. Then, on the January 14, 2013 cut-off date, the *Luppino* Court further extended the discovery deadline to February 19, 2013. (Mem. to Enforce, Ex. U.) As reflected on the docket, the parties subsequently submitted written letters to the New Jersey court addressing whether the February 19, 2013 date would also be extended. On February 21, 2013, the parties participated in a status conference with the *Luppino* Magistrate Judge to address a number of outstanding issues, including additional discovery. (*See* Dkt. 8, Reply Br. at Exs. A and B.) The Magistrate Judge reserved ruling on "how long discovery is going to be." (*Id.* at Ex. B.) It appears, therefore, that the discovery period in *Luppino* remains open even now.

Accordingly, the 2013 Subpoena was served before the discovery deadline, and, as a result of subsequent extensions of that deadline, MBFS has had more than adequate time to respond to the subpoena. Moreover, unlike the cases MBFS relies on its brief, none of the parties in the *Luppino* litigation have objected to the timing of this third-party subpoena or indicated that it would unduly delay the underlying proceedings. *See Miami Dade County v. Johnson Controls, Inc.*, No. 10-20881, 2011 U.S. Dist. LEXIS 43243, at *8 (S.D. Fla. Apr. 21, 2011) (where plaintiff did not object to a motion to compel, court found that "there is no basis for Non-Party Lea to raise an objection on

timeliness grounds where there is no indication that the production of the subpoenaed documents will interfere with the trial date or any other deadlines in this case, or otherwise affect Lea in any manner other than having to respond to the subpoena."). This Court does not believe the Petition should be dismissed as untimely.

### B. Enforcement Of The Subpoena

#### 1. Legal standard

The 2013 Subpoena seeks three primary categories of information: (1) data and documents relating to wheel and tire insurance claims; (2) documents relating to vehicles financed by MBFS that customers returned prior to the termination of leasing periods or for which customers sought to withhold payment, as a result of recurring wheel problems with such vehicles; and (3) documents relating to vehicles intended for sale through the CPO program that dealers and/or customers determined did not meet quality standards due to bent or cracked wheels. (Mem. to Enforce at 7-8.) Plaintiffs contend that the information sought in the Subpoena is relevant to their central theory of a design defect – *i.e.*, to demonstrate that the wheels are prone to failure at a high rate due to a design defect and that Plaintiffs' (and class members') problems were not isolated occurrences attributable to their specific driving habits or individual circumstances. (Mem. to Enforce at 11.)

"Under the Federal Rules of Civil Procedure discovery is generally broad and generous." *William Beaumont Hosp. v. Medtronic, Inc.*, No. 09-11941, 2010 WL 2534207 at *7 (E.D. Mich. June 18, 2010). Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "As the Supreme Court has instructed, because discovery itself is designed to

11

help define and clarify the issue, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Conti v. American Axle and Mfg., Inc.*, 326 Fed. Appx. 900, 904 (6th Cir. 2009).

Moreover,

> A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26. *See, e.g.*, *Martin v. Oakland County*, No. 06-12602, 2008 U.S. Dist. LEXIS 84217, 2008 WL 4647863, at *1 (E.D. Mich., Oct. 21, 2008) (Pepe, M.J.) (citations omitted). Rule 45(c)(1) requires that the party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). To determine whether a burden is undue, a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it. *Lowe v. Vadlamudi*, No. 08-10269, 2012 U.S. Dist. LEXIS 127586, 2012 WL 2887177, at *2 (E.D. Mich., Sept. 7, 2012) (Lawson, J.) [citations omitted]. That is, the Court must weigh "the likely relevance of the requested material . . . against the burden . . . of producing the material." *Ford Motor Credit Co*, 26 F.3d at 47. Non-party status is also a relevant factor. *Lowe*, 2012 U.S. Dist. LEXIS 127586, 2012 WL 2887177, at *2 . . . .

*United States v. Blue Cross Blue Shield of Mich*, No. 10-14155, 2012 U.S. Dist. LEXIS 141355, at * 14-15 ( E.D. Mich., Oct. 1, 2012).

> 2.  *Document requests*
>
>    a.  *Wheel and tire insurance.*

Plaintiffs' subpoena seeks information concerning MBFS' wheel and tire hazard insurance plans, including: terms, scope of coverage, pricing, and administration of such plans; claims for coverage under such plans; and profits and revenues generated from the sale of such plans. (Resp. at 11.)

The tire and wheel insurance that MBFS sells to customers who purchase or lease Mercedes-Benz vehicles provides coverage for the costs of replacing wheels damaged due to "covered road hazards." (Mem. to Enforce at 11.) "Road Hazards" are defined as "debris on a public roadway such as nails, glass, potholes, rocks, tree limbs or any other object or condition not normally found in the roadway." (*Id.*) Plaintiffs contend that the plan information "is relevant to establish the high incidence of wheel failures . . . because the level of demand for (and claims made pursuant to) such coverage would correlate to the wheel failure rate." (*Id.*)

As MBFS argues, however, the underlying litigation concerns an alleged *design defect* that causes certain wheels to "bend and crack under *normal* driving conditions." (Mem. to Enforce at 1 (emphasis added); *see also* 3d Am. Compl., ¶ 46 ("The Rims suffer from a manufacturing defect in that they lack sufficient hardness or uniformity of hardness to withstand the pressures associated with ordinary, on-road driving conditions.").) Thus, says MBFS, the requested information pertaining to its wheel and tire hazard insurance plans is not relevant because such plans only cover damage due to "object[s] or condition[s] not normally found in the roadway." (Resp. at 12.) The Court agrees. The MBFS plans do not cover damage from any defect alleged in the Complaint. As counsel explained at the hearing, defects in materials or workmanship occurring within four years

13

or 50,000 miles of the original sale are covered by the MBUSA warranty. (*See* Mem. to Enforce, 3d Am. Compl., ¶¶ 7, 183-185).) And MBUSA has provided discovery on warranty claims for defective wheels.

Plaintiffs acknowledge that the insurance provided by MBFS is intended to be separate and distinct from the warranty coverage for the defects at issue. It is their contention, however, that to the extent the wheels are inherently defective, they are more vulnerable or susceptible to being damaged by even minor road hazards – e.g., small potholes, uneven road surfaces, railroad tracks. Thus, say Plaintiffs, if the wheels are inherently defective (as they argue) such that they will more easily be damaged, then MBFS is likely to have experienced an increase in the number of insurance claims and to have altered its pricing accordingly (to deal with the pay out on more claims). Plaintiffs therefore want to analyze MBFS' summary and aggregate (trend) insurance data to determine if it supports their theory.

This theory, however, is too speculative to support the corresponding burden imposed on MFBS. In considering the scope of discovery, the court should balance a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Bush v. Dictaphone Corp*., 161 F.3d 363, 367 (6th Cir. 1998). This is especially true with requests to non-parties. *See Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The rule is . . . well established that nonparties to litigation enjoy greater protection from discovery than normal parties."). As MBFS, explains, the only way to ascertain the cause of any increase in insurance claims is to analyze every claim individually and that this analysis "would only show that wheels or tires experienced damage as a result of road hazards." (Resp. at 12.)

The Court is aware that the MBFS wheel and tire insurance is administered by a third-party

14

entity, Safe-Guard Products International, LLC ("Safe-Guard"), and that Plaintiffs have subpoenaed Safe-Guard for much of the same information. (Mem. to Enforce at 8, n.28.) Safe-Guard is opposing the subpoena. In its response to Plaintiffs' petition to enforce the subpoena, Safe-Guard similarly explains that "in some jurisdictions, wheel and tire protection plans administered by Safe-Guard also cover damage due to defects in materials or workmanship. But because MBUSA's warranty provides that coverage and the plans at issue do not cover what is otherwise covered by another's warranty, the vast majority of the claims Safe-Guard administers pertain to road hazards and matters other than the alleged defects at issue." *Luppino v. Safe-Guard*, Case No. 13-00964 (N.D. Ga. 2013) (Dkt. 3 at 14.)

Thus, the Court agrees with MBFS that the number (and pricing) of plans sold to cover damage from things other than a defect is not, in light of the corresponding burden, sufficiently probative of whether the *Luppino* Defendants sold wheels with defects, and it should not be required to produce the requested documents or witness.

### b. *Stop payments due to damaged wheels*

Plaintiffs' subpoena also seeks information concerning attempts by customers to terminate vehicle leases or stop making payments (under financing arrangements) due to allegedly damaged wheels.[1] These documents, say Plaintiffs, would support their theory that wheel failures are widespread. To the extent Plaintiffs' requests are limited to vehicles with the alleged defect, MBFS does not object on relevancy grounds. Even with this limitation, however, MBFS contends that the

---

[1] As Plaintiffs summarize: "Documents relating to vehicles leased through MBFS' lease program that customers sought to return due to failed wheels, or vehicles financed by MBFS for which customers threatened to withhold payments due to failed wheels. (Document Request Nos. 13, 14; Deposition Topic No. 7)." (Mem. to Enforce at 10.)

15

requests are overly broad and unduly burdensome. More specifically, MBFS explains that responding to these requests

> would require countless individualized inquiries to (1) identify customers who sought to return a vehicle to MBFS and (2) determine whether they did so because of an allegedly defective wheel. MBFS's computer systems do not allow it to simply retrieve accounts of customers who returned or sought to return a vehicle to MBFS on account of wheel damage, much less wheel damage related to the alleged defect, as customer accounts are not pre-labeled or designated as meeting such criteria. Rather, MBFS would have to search and individually review its customers' accounts to determine which ones meet such criteria. This, of course, would require fact-intensive individual inquiries to determine whether a customer sought to return a vehicle on account of defective wheels, as opposed to wheels damaged through another cause such as a pot-hole, debris, accident, etc.

(Resp. at 14.)

Prior to the oral argument, however, the Court met with the parties to discuss ways to make this request more manageable for MBFS. Pursuant to the parties' discussions, MBFS has agreed to run a search through its customer database for the terms "wheel" and "rim" and to produce all entries that contain a hit or match.[2] With the production of these records, the parties agree that an additional 30(b)(6) witness is not needed.

### c. *Vehicles in CPO program with wheel damage*

The third category of information at issue concerns vehicles that either dealerships or customers allege were unfit to be classified and sold as Certified Pre-Owned vehicles because they

---

[2] MBFS will conduct an initial review of the documents and endeavor to remove any false positives such as "*Wheel*ing, PA," "t*rim*," or "p*rim*ary phone number."

had damaged wheels. (Mem. to Enforce, Ex. J at 12, 16-18.)[3] MBFS initially objected to these requests on the grounds that they are overly broad and unduly burdensome – even if limited to complaints of wheel damage attributable to the alleged defect. (Resp. at 17.) MBFS explained that it has no role in determining whether a vehicle meets the criteria to be sold or leased as a Certified Pre-Owned Mercedes-Benz vehicle, does not know which vehicles were sold or leased through the CPO program, and has no efficient way to identify which vehicles received dealership complaints regarding damaged wheels. (Resp. at 15-16.)

Plaintiffs, however, simply want information in MBFS' possession, custody or control that pertain to dealer or customer complaints about the condition of the wheels, irrespective of MBFS' knowledge of whether it is a CPO vehicle. They believe such documents exist because an email was apparently produced in the *Luppino* litigation in which a dealer communicated with MBFS about a wheel defect issue. Plaintiffs indicated in their briefing that they "are willing to negotiate with MBFS to determine the scope of information that MBFS could collect and produce without incurring an undue burden." (Reply at 4.)

Thus, the Court also addressed this issue with the parties in the pre-hearing conference. At that time, counsel for MBFS agreed to revisit the discovery requests with their client. To the extent MBFS believes additional communications may exist for the time period 2006 to the present, the parties will negotiate a protocol for searching and retrieving electronically stored information, with Plaintiffs paying the reasonable costs incurred. If MBFS confirms that it has no responsive

---

[3] As Plaintiffs summarize: "Documents relating to vehicles intended for sale or lease through the CPO Program which dealers declined to accept from MBFS due to failed wheels or which customers alleged had been sold with already failing wheels. (Document Request Nos. 15, 16; Deposition Topic Nos. 8, 9)." (Mem. to Enforce at 10.)

17

documents, it will provide a sworn affidavit to this effect. Under this resolution, Plaintiffs agree that they will not need a 30(b)(6) witness.

## III.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court RECOMMENDS that Plaintiff's Petition to Enforce the Subpoena (Dkt. 1) be GRANTED IN PART AND DENIED IN PART as follows: (1) Plaintiffs' request for MBFS' wheel and tire insurance information be denied; (2) Plaintiffs' request for customer information regarding stopped leases or payments be granted to the extent that, following a search of the MBFS customer database for the terms "wheel" and "rim," MBFS produce all responsive records within 10 days of any adoption of this Report and Recommendation; and (3) Plaintiffs request for information regarding certain vehicles in the CPO program be produced to the extent any additional communications are believed to exist and can be located through an ESI search. These documents shall be produced pursuant to the protocol negotiated by the parties.

## IV.    FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies,

through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

                                              S/Laurie J. Michelson
                                              Laurie J. Michelson
                                              United States Magistrate Judge

Dated: April 11, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on April 11, 2013.

                                              s/Jane Johnson
                                              Case Manager to
                                              Magistrate Judge Laurie J. Michelson